UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MELODI NAVAB-SAFAVI                 )
10500 Rockville Pike                )
G21                                 )
Rockville, Maryland 20852-3315      )
                                    )
            Plaintiff               )
       v.                           )   Civil Action No.: 08-1225
                                    )
                                    )
BROADCASTING BOARD OF               )
GOVERNORS                           )
330 Independence Ave., SW           )
Washington, DC 20237                )
                                    )
and                                 )
                                    )
JAMES K. GLASSMAN                   )
U.S. Department of State            )
2201 C Street, N.W.                 )
Washington, D.C.  20520             )
                                    )
and                                 )
                                    )
MARK McKINNON                       )
330 Independence Ave., SW           )
Washington, DC 20237                )
                                    )
and                                 )
                                    )
STEVEN J. SIMMONS                   )
330 Independence Ave., SW           )
Washington, DC 20237                )
                                    )
and                                 )
                                    )
JANICE H. BRAMBILLA                 )
330 Independence Ave., SW           )
Washington, DC 20237                )
                                    )
and                                 )
                                    )

| | |
|---|---|
| MARY POGGIOLI | ) |
| 330 Independence Ave., SW | ) |
| Washington, DC 20237 | ) |
| | ) |
| and | ) |
| | ) |
| WAYNE D. GREENE | ) |
| 330 Independence Ave., SW | ) |
| Washington, DC 20237 | ) |
| | ) |
| and | ) |
| | ) |
| GARY C. HOSFORD | ) |
| 330 Independence Ave., SW | ) |
| Washington, DC 20237 | ) |
| | ) |
| and | ) |
| | ) |
| SHEILA GANDJI | ) |
| 330 Independence Ave., SW | ) |
| Washington, D.C. 20237 | ) |
| | ) |
| and | ) |
| | ) |
| DANFORTH AUSTIN | ) |
| 51 Joanna Way | ) |
| Short Hills, New Jersey | ) |
| 07078 | ) |
| | ) |
| Defendants | ) |
| | ) |

## FIRST AMENDED COMPLAINT

### Jurisdiction

1. The Broadcasting Board of Governors (BBG) and the individual defendants named herein are entrusted with the responsibility of promoting the fundamental principles of democracy to people around the world. These defendants willfully and maliciously used the power of their positions to punish plaintiff Melodi Navab-Safavi, a contractor with an exceptional record of providing translation and other services to BBG,

because of her appearance in a peace video protesting the war in Iraq, and because she is Iranian. Ms. Navab-Safavi was considered "by far one of the best translators in the Persian Service," but after officials of the BBG met and reviewed the video, and judged it to be "anti-American," defendants terminated her contract. Plaintiff was speaking purely as a private person on a matter of great public importance. These actions flagrantly violated her rights to freedom of speech and equal protection of the law under the First and Fifth Amendments of the United States Constitution. This lawsuit, arising under 28 U.S.C. § 1331, seeks redress in the form of declaratory and injunctive relief (from defendant BBG) and monetary relief (from all other defendants) for these injuries.

**Parties**

2. Plaintiff, Melodi Navab-Safavi, is a citizen of the United States, who was born in Iran. Ms. Navab-Safavi resides in Maryland. She began providing services as a contractor to defendant BBG in July 2004, until her contract was terminated on July 19, 2007.

3. Defendant BBG is a federal agency charged with overseeing all U.S. government and government-sponsored, non-military, international broadcasting services.

4. Defendant Glassman was at all times relevant to this lawsuit, Chairman of the Board of Governors of defendant BBG. He is sued in his individual capacity for participating in and/or condoning the retaliatory and discriminatory conduct challenged herein. Defendants McKinnon and Simmons were at all times relevant to this lawsuit, Governors of defendant BBG. They are sued in their individual capacities for participating in and/or condoning the retaliatory and discriminatory conduct challenged

herein.  Defendants Austin, Brambilla, Poggioli, Greene, Hosford, and Gandji were at all times relevant to this lawsuit, officials employed with the BBG.  They are sued in their individual capacities for participating in and/or condoning the retaliatory and discriminatory conduct challenged herein.

### Facts

5. Melodi Navab-Safavi entered into a contract with defendant BBG to provide translation and other assigned services to the Voice of America's (VOA's) Persian Service in July 2004.  The Persian Service produces news programs, features and talk shows that air approximately six hours each day, and at all times relevant to this lawsuit, engaged twenty or more independent contractors for VOA productions.  Ms. Navab-Safavi -- fluent in English, Farsi, Norwegian and Swedish -- was one of these translators.  The vast majority of her work was to translate material for VOA productions from English into Farsi and to provide voice-over services (reading copy that was already approved by an editor).  From the beginning of her contract until June 2006, Ms. Navab-Safavi worked for VOA's radio broadcast.  From June 2006 until her termination she worked on VOA's television broadcasts primarily as a translator and also providing technical support for the production of newscasts.  Ms. Navab-Safavi never appeared on a VOA television broadcast, except on one occasion when her band was featured, and she was interviewed as a guest.

6. All of Ms. Navab-Safavi's work, whether as a translator, or in voice-over or other production services, was carefully reviewed by a VOA editor or producer.

7. Ms. Navab-Safavi performed these duties in a consistently outstanding manner, leading VOA and defendant BBG to repeatedly renew her contract.  One of the

VOA managers frequently overseeing her work was Joy Wagner.  Wagner described Navab-Safavi as "by far one of the best translators in the Persian Service and has a superior narrating voice. . . . Melodi's work habits are impeccable, but above all she is a team player; NEVER causes problems, is always cooperative and willing to help."  Amy Katz, an Executive Producer in VOA's Persian News Network, described Navab-Safavi as follows: "her work and work ethic are excellent on all levels. . . In her work here at VOA, she was called upon primarily to translate from English to Farsi.  Her translation and writing won rave reviews from our editors, as did her ability to adapt the printed word for television.  Her upbeat attitude, radiant smile and team spirit make her a pleasure to have around."  Another VOA manager raved that "I have nothing but praise for her acumen, intelligence, thoroughness and honesty" and lamented "if I had the authority, I would rehire her immediately."

8.  On June 26, 2007 (less than three weeks before her contract was summarily terminated) BBG again renewed Ms. Navab-Safavi's contract and authorized additional funds to be paid pursuant to the contract.

9.  At no time prior to being informed that her contract had been summarily terminated did the VOA, BBG or any defendant herein ever indicate that plaintiff's performance was less than fully satisfactory, or that her services would no longer be required.  To the contrary, many agents of defendant BBG spoke with plaintiff about maintaining a long-term relationship with the agency.

10.  Ms. Navab-Safavi is a member of a pop band named Abjeez, all of whose members, besides Ms. Navab-Safavi, reside in Sweden.  Abjeez, which has been banned

in Iran, makes songs and videos regarding, among other things, women's rights and other social problems in Iran.

11.  VOA managers were aware of, and indeed, encouraged Ms. Navab-Safavi's participation in the band, and had even broadcasted Abjeez's videos on occasion during her tenure as a contractor with the agency.

12.  Ms. Navab-Safavi never used VOA facilities or resources in any of her band's activities.

13.  In early July 2007, Abjeez produced a peace video called DemoKracy, which protested U.S. involvement in the Iraq War, and contained video footage of wounded U.S. soldiers, U.S. flag-draped coffins, as well as brutal injuries and deaths suffered by Iraq's civilian population during the war.  Ms. Navab-Safavi appeared in this video, which was posted on YouTube on July 9, 2007.

14.  As was her custom in all Abjeez productions, Ms. Navab-Safavi used no VOA resources to make this film, and participated in its production only during non-work hours and on her days off.  The song that accompanies the video does not mention VOA, the video does not portray any VOA activity or employee, and none of the artists' names or their professional affiliations are included in the video.  The video appears only on public internet domains, such as YouTube; it has not been commercially distributed or sold.  In a September 12, 2007 letter regarding the DemoKracy video to Senator Barbara A. Mikulski, VOA wrote "[w]e are satisfied that all production was accomplished off-site, and that no VOA resources were utilized."

15.  When she appeared in the DemoKracy video, Ms. Navab-Safavi was speaking strictly as a private person expressing her opinion about a matter of great public

importance -- the United States' involvement in the Iraq War. In the September 12 letter to Senator Mikulski, VOA conceded that it considered the DemoKracy video to be "public speaking on a matter of concern to the Agency." It was also a matter of great concern to Ms. Navab-Safavi and the public at large, and it was protected speech under the First Amendment.

16. When members of the Board of Governors of defendant BBG, including Chairman Glassman, learned of the existence of the DemoKracy video, they met with senior managers of the BBG to discuss it. At that meeting, Chairman Glassman expressed the view that the DemoKracy video was "anti-American," and defendant Austin voiced similar sentiments.

17. Upon learning that concerns had been raised about the DemoKracy video, Ms. Navab-Safavi's direct supervisor, Joy Wagner, wrote to defendant Gandji to clarify Ms. Navab-Safavi's limited job responsibilities. She stated: "Melodi is not a journalist; has never tried to be a journalist. She strictly translates news and feature stories. She does narrate some of the History Channel segments. She has never appeared on-air as an VOA employee and specifically has asked that we never use her real name on air. We have honored those requests."

18. On July 19, 2007, Benjamin Jones Keeling, Staff Director of the Persian News Network, summoned plaintiff into a meeting with Director of the Persian Service Sheila Gandji, Wayne D. Greene and Gary C. Hosford. Mr. Hosford informed plaintiff that "today we are terminating your contract with VOA. We have used your services for the past three years, but from now on we don't need them any longer." Hosford then pressured plaintiff to sign a form, on the spot, acknowledging that her services had been

terminated, effective immediately.  Plaintiff's then current contract had not expired, and (as previously mentioned) defendant BBG had again just recently renewed the contract and provided dedicated funding for it.

19.  BBG terminated the contract on July 19, 2007 "effective 12 midnight EST, July 19, 2007."  In so doing, BBG breached the provision of the contract requiring that termination be "by prior written notice, received at least 30 days before the effective date of termination." Defendant had not intended to terminate the contract prior to learning of plaintiff's involvement in the DemoKracy video, but decided to do so immediately, solely because of the video.

20.  Plaintiff returned to her office to pack her belongings and to say goodbye to colleagues she had worked with over the past three years.  When she returned to Gandji's office to sign paperwork relating to the contract termination, Gandji appeared to be very upset, and told plaintiff "Melodi, this situation is very unfortunate.  If this had happened in another service, like the Mandarin service, nothing would have happened.  But since you are Iranian, working at the Persian service during these sensitive political times with Iran, this has become a disproportionate problem for you."

21.  The DemoKracy video first became a "disproportionate problem" when Senator Tom Coburn learned of its existence and, either directly or through his staff, used his influence as a Senator to lobby BBG officials to punish those people affiliated with the video.

22.  Plaintiff's husband, Saman Arbabi, is an employee of BBG working in the VOA Persian Service.  Mr. Arbabi helped to produce the DemoKracy video, again exclusively on his own time and using his own resources.  When Gandji learned of his

involvement in the video, she and an official from BBG's Labor Relations office, defendant Mary Poggioli, investigated the circumstances surrounding the making of the video. Gandji and Poggioli then met with Arbabi and told him that even though they had verified that he had not used any VOA resources to produce the video, BBG management did not want "a scandal on its hands" because it might affect Congressional funding of the agency. Therefore, they pressured Mr. Arbabi to resign. In a second meeting between Mr. Arbabi and defendants Gandji and Poggioli, which occurred on July 18, 2007, Poggioli stated that the Board of Governors had met to discuss the video and had judged it to be "anti-American." Poggioli stated that the Board members "see you as a liability," and Gandji added that Senator Coburn was "leading the attack" to take action against those people involved in producing it. Mr. Arbabi again refused to resign. The next day, his wife's contract with BBG was terminated.

23. In an interview with an agency EEO counselor, Ms. Gandji further conceded that she was "taken aback at the recent anti-war video entitled DemoKracy."

24. Although Ms. Navab-Safavi was told that BBG no longer "needed her services," after she was terminated, defendants repeatedly hired other independent contractors to provide the very same services that plaintiff had performed.

25. Defendants terminated Ms. Navab-Safavi's contract with BBG because of her speech as a private person on a matter of public concern (the Iraq War), and because of her race and ethnicity (Persian) and national origin (Iranian). Defendants acted with malice, and/or in reckless disregard of plaintiff's rights to freedom of speech and equal protection under the law.

26. Ms. Navab-Safavi has suffered significant injuries from defendants' unlawful conduct, including loss of income, loss of property, damage to her reputation, fear, anxiety, humiliation, emotional distress and loss of enjoyment of life.

## VIOLATIONS OF LAW

### COUNT ONE

**INFRINGEMENT OF PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH IN VIOLATION OF THE FIRST AMENDMENT TO
THE UNITED STATES CONSTITUTION**

27. Paragraphs 1-26 are realleged.

28. Defendants' actions, as set forth above, infringed upon plaintiff's right to freedom of speech, in violation of the First Amendment to the United States Constitution.

29. Defendants' conduct was willful, malicious and taken in reckless disregard of plaintiff's rights, and was intended to, and did, cause her significant harm.

### COUNT TWO

**INFRINGEMENT OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION UNDER THE LAW IN VIOLATION OF THE FIFTH AMENDMENT TO THE
UNITED STATES CONSTITUTION**

30. Paragraphs 1-26 are realleged.

31. Defendants' actions, as set forth above, infringed upon plaintiff's right to equal protection under the law, in violation of the Fifth Amendment to the United States Constitution.

32. Defendants' conduct was willful, malicious and taken in reckless disregard of plaintiff's rights, and was intended to, and did, cause her significant harm.

WHEREFORE, plaintiff requests that this Court:

1) Declare that defendants have violated her rights under the Constitution;

2) Enjoin defendants from further violations of plaintiff's rights;

3) Award plaintiff consequential, compensatory and punitive damages in an amount to be proven at trial against any individual defendants found liable in this matter;

4) Award plaintiff her costs and reasonable attorneys' fees incurred in this action; and the claims that necessarily preceded it;

5) Award such other relief as the Court deems just.

## JURY DEMAND

Plaintiff requests trial by jury.

/s/
Richard A. Salzman  422497
Carolyn N. Lerner  426254
Heller, Huron, Chertkof
Lerner, Simon & Salzman
1730 M St., NW Suite 412
Washington, DC 20036
(202) 293-8090

Counsel for Plaintiff